IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GEORGE LAMONDE,** | : | |
| | : | |
| **Plaintiff,** | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 21-2385 |
| | : | |
| **BATH SAVER, INC.,** *et al.*, | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM

**TUCKER, J.**                                                                                           **March 3, 2022**

Presently before the Court is Defendants Bath Saver, Inc. and Homespire Remodeling Group, LLC's ("Defendants" or "Bath Saver") Partial Motion to Dismiss (ECF No. 10) and Plaintiff George Lamonde's ("Plaintiff" or "Lamonde") Response in Opposition (ECF No. 11). Upon careful consideration of the Parties' submissions, and for the reasons outlined below, Defendants' Motion is **GRANTED in part and DENIED in part**.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**[1]

At the time he filed his Complaint, Plaintiff was a 66-year-old man who previously worked for Defendants for approximately twelve years. Compl. at ¶ 14; *see also* Pl.'s Resp. at 3. Defendants initially hired Lamonde in August of 2008 as the Regional Vice President of Sales ("RVP of Sales"). Compl. at ¶¶ 15-16. Plaintiff remained in this position until May of 2018 before Defendants demoted him to Executive Sales Manager ("ESM"). *Id*. at 18.

Upon this demotion, Plaintiff alleges he felt degraded; the ESM position was a lower-hierarchical position than that of the RVP that forced him to accept a $50,000 reduction in salary.

---

[1] This section draws primarily from Plaintiff's Complaint ("Compl.") and Brief ("Pl.'s Resp.").

1

Compl. at ¶ 20. Moreover, Defendants' owner, Frank Ciccocippo, threatened Plaintiff that if he failed to inform employees that he was "stepping down," Ciccocippo would terminate him. *Id*. at ¶¶ 18-20. Plaintiff accepted and worked as an ESM for approximately two years. Pl.'s Resp. at 4. He, however, continued to perform the same duties required of the RVP role, all without the title or salary. Compl. at ¶ 22.

Plaintiff alleges he was subject to discrimination and disparate treatment by Defendants' management and staff due to his age. Compl. at ¶ 24. His Complaint details that: (1) Defendants' management questioned Plaintiff multiple times about when he planned to retire; (2) younger employees questioned Plaintiff and his wife when he planned to retire because they wanted his work location; (3) Defendants' employees referred to Plaintiff as the "old guy;" (5) employees teased Plaintiff that he needed a wheel chair; and (6) another owner, Marty Gross, told Plaintiff that he needed to retire so younger employees could take over. *Id*. at ¶ 25.

In early 2020, Plaintiff discussed with Ciccocippo his plan to rehire a former sales representative with approximately six years of experience in the company. Compl. at ¶ 26. Ciccocippo asked, "why am I bringing this sales rep back, he is old as f*ck." *Id*. at ¶ 27. Lamonde objected to the comment, stated that the sales rep was the same age as Plaintiff, and asked, "what is wrong with that?" *Id*.

On January 8, 2021, Defendants informed Plaintiff that they planned to terminate his ESM position due to poor performance. Compl. at ¶¶ 28-29. Plaintiff alleges that, at the time of this decision: (1) his office performed the best out of Defendants' other 26 locations; and (2) Defendants replaced him with someone substantially younger. *Id*. at ¶¶ 30-31.

Before they terminated the ESM position, Defendants' offered Plaintiff the role of the window division's manager but he turned it down because he felt it was humiliating and would

result in a $30,000 salary reduction. Compl. at ¶¶ 32-33. Instead, Plaintiff requested and received a Sales Agent position in the bath fitter division because he had experience in the division and could make more money through commission. *Id.* at ¶ 36.

Defendants allowed Plaintiff to work as a Sales Rep, however, after a week, he found the position difficult and physically demanding. Compl. at ¶¶ 37-40. He had to climb stairs, carry boxes filled with samples, make several trips to and from his car, and enter the homes of mask-less individuals during the COVID-19 pandemic. *Id.* at ¶ 39. Plaintiff feared that he would contract COVID-19 and, because of his age and disabilities, would suffer severe complications; thus, on January 27, 2021, Plaintiff resigned. *Id.* at ¶¶ 40-41.

The following day, Plaintiff sent a follow-up email that outlined why he resigned and his concerns about the age discrimination he experienced. Compl. at ¶ 41. Defendants' Vice President of Human Resources, Eric Goodling, responded that any actions made towards him were not discriminatory. *Id.* at ¶ 42.

On May 25, 2021, Plaintiff commenced this action. ECF No. 1. After exhausting his administrative remedies on his Pennsylvania Human Relations Act ("PHRA") claims, Plaintiff filed a stipulation to amend his complaint on February 9, 2022, ECF No. 12, which this Court granted, on February 24, 2022. ECF No. 14. His Amended Complaint now brings two counts, alleging violations of the: (1) Age Discrimination in Employment Act ("ADEA"); and (2) PHRA. ECF No. 12-1, p. 7-8. Under both counts, Plaintiff alleges he suffered from: (1) age discrimination; (2) hostile work environment; and (3) retaliation. ECF NO. 12-1, p. 7-8.

Defendants filed a partial Motion to Dismiss on July 26, 2021. ECF No. 10. In their motion, Defendants argue Plaintiff's: (1) allegation regarding his May 2018 demotion is time-barred under ADEA; (2) factual allegations are insufficient to set forth a *prima facie* case of

retaliation; and (3) claims for hostile work environment are insufficient to form the basis of a hostile work environment claim as a matter of law. Defs.' Br. at 1-2.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) Motion to Dismiss seeks to test the sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The touchstone of that pleading standard is plausibility. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and quotations omitted). Facial plausibility requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* A plaintiff will not prevail if he provides only "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). Instead, the plaintiff must detail "enough facts to raise a reasonable expectation that discovery will reveal evidence of 'each necessary element of the claims alleged in the complaint.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556 (2007)).

The Third Circuit set forth a three-part test that district courts must apply when evaluating whether allegations survive a 12(b)(6) motion to dismiss. *Santiago v. Warminster Township*, 629 F.3d 121 (3d Cir. 2010). A court must: (1) identify the elements of the claim; (2) review the complaint to strike conclusory allegations; and (3) look at the well-pleaded components of the complaint and evaluate "whether all the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). If the complaint fails to do so, the motion to dismiss will be granted.

### III. DISCUSSION

#### A. The Facts Surrounding Plaintiff's Demotion and its Timeliness

Defendant argues that Plaintiff's 2018 demotion is a discrete act, actionable on its own, and occurred in 2018. Defs.' Br. at 7. Because it could have been brought on its own and Plaintiff choose not to, any claim based on it must be dismissed as untimely. *Id*. This Court finds that the demotion occurred outsider the prescribed time and, thus, cannot be brought now as a distinct and separate claim. However, Defendants' motion is denied as to Plaintiff's ability to use the facts surrounding his demotion to show a history of discriminatory behavior.

To bring a claim under the ADEA, a plaintiff must file a charge with the EEOC within 300 days of the alleged act or conduct. *Nat' l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). Conduct that occurs more than 300 days prior to filing an EEOC charge is time-barred and cannot be considered in evaluating the sufficiency of a pleading. *Id*. (300 days after an alleged unlawful employment practice is the time limit that is construed as a statute of limitations, and any claims based on discrete acts occurring prior to that date are time-barred.).

"Discrete acts" are individually actionable and are considered time-barred if they fall outside of the statutory period, regardless of if they are related to acts within the statutory period. *See O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d. Cir. 2006) (citing *Nat' l R.R. Passenger Corp.*, 536 U.S. at 113). However, if a plaintiff alleges ongoing, systematic violations, he or she can recover for acts outside the 300-day period using the continuing violations theory. *See Nat' l R.R. Passenger Corp.*, 536 U.S. at 110-112.

While Plaintiff's demotion occurred outside of the 300-day period, he alleges that he was continually discriminated against because of his age before and after his demotion. Lamonde

avers that the demotion was not a "discrete adverse action," which led directly to his ADEA discrimination claim, but a fact that provides appropriate factual background to support his hostile work environment claim and its causation.

The Court finds that the demotion does fall under the continuing violations theory. *See Nat' l R.R. Passenger Corp.*, 536 U.S. at 110-112. Plaintiff pleaded his 2018 demotion to further support Defendants' history of discriminatory behavior and that he worked in a hostile work environment. Because of the continuing violations doctrine, Plaintiff is allowed to include facts that occurred outside the statute of limitations to prove a pattern or continuation of discrimination.

Accordingly, based on the 300-day time limit, this Court grants Defendants' partial motion to dismiss and bars any discrete acts that occurred before Plaintiff filed his charge with the EEOC. However, actions made after Plaintiff's filed EEOC charge can be considered. Additionally, "the statute does not bar an employee from using [] priors acts as background evidence in support of a timely claim." *Endo Pharm. Inc. v. Fryer*, No. 17-2245, 2020 WL 4748296, at *5 (E.D. Pa. Aug. 14, 2020), and the motion is denied as to Plaintiff's ability to use facts surrounding his demotion to demonstrate discriminatory behavior.

### B. Retaliation Claims

Second, Defendants argue that Plaintiff failed to make *prima facie* ADEA and PHRA retaliation claims.[2] The ADEA makes it unlawful for an employer to retaliate against an employee for either "oppos[ing] any practice made unlawful" by the statute or for participating "in any manner in an investigation, proceeding, or litigation" under the statute. 29 U.S.C. §

---

[2] Courts analyze ADEA claims and PHRA claims together, using the same framework. *See Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021) ("Our analysis of the ADEA applies equally to the PHRA."). This Court will therefore analyze the ADEA and PHRA claims together.

623(d). In the absence of direct evidence of retaliation, the *McDonnell-Douglas* framework applies to retaliation claims under the ADEA and PHRA. *See Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005).

To establish a *prima facie* case of retaliation under the ADEA, a plaintiff must show that: (1) they engaged in an ADEA protected activity; (2) defendant took an adverse employment action against them after their protected activity; and (3) a causal relationship exists between their protected activity and defendant's adverse employment action. *Zielinski v. Whitehall Manor, Inc.*, 899 F. Supp. 2d 344, 353 (E.D. Pa. 2012). "To prove causation, plaintiff may show either (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory activity; (2) a pattern of antagonism coupled with timing; or (3) that from the 'evidence gleaned from the record as a whole' the trier of fact should infer causation." *Id*. at 355 (citing *Griesbaum v. Aventis Pharmaceuticals*, 259 Fed. App' x. 459, 466-467 (3d Cir. 2007)).

Plaintiff's Complaint states a plausible retaliation claim under the ADEA and PHRA. Here, the first element is met. In determining whether a specific complaint constitutes "protected activity," the district court looks at "the content of the complaint, rather than its form." *Zielinski*, 899 F. Supp. 2d at 354 (citing *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995)). Protected conduct does not include "mere complaints 'about unfair treatment' that fail to reference 'a protected characteristic as the basis for the unfair treatment.'" *Gavurnik v. Home Props., L.P.*, 227 F. Supp. 3d 410, 420 (E.D. Pa. 2017) (quoting *Kier v. Lackland & Sons, LLC*, 72 F. Supp. 3d 597, 616 (E.D. Pa. 2014)).

Here, Plaintiff sufficiently plead that he objected to Ciccoippo's comment regarding the rehiring of a former sales rep. Ciccoippo showed disdain for hiring someone who he considered old by stating, "why am I bringing this sales rep back, he is old as f*ck." Plaintiff objecting to

7

this comment is enough to satisfy the first prong. *Curay Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006) (holding Title VII's opposition clause can be triggered by "informal protests of discriminatory employment practices") (citations omitted).

The second element is also met. Plaintiff pled that, following his objection, he was informed that he was being terminated from his position as ESM. Compl. at ¶ 28. That fact is enough to satisfy the *Iqbal* standard at this time.

Plaintiff has successfully plead the third and final element. The determination of whether the temporal proximity infers a causal connection is fact sensitive, and the ultimate determination depends on "how proximate the events actually were, and the context in which the issue [arose]." *Grasty v. World Flavors, Inc.*, 2011 WL 3515864, *4 (E.D. Pa. 2011) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000)). When the alleged retaliation occurs only a short time after the employer received notice of the employee's protected activity, courts are quick to draw an inference of causation. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (holding that two days between notice of the protected activity and the retaliation led to an inference of causation).

That said, the Third Circuit has also determined that a time lapse as long as four months may still be suggestive of a causal connection. *See e.g., Kachmar v. SunGard Data Systems, Inc.*, 109 F.3d 173, 177 (3d Cir.1997) (finding that adverse employment action taken four months after employee engaged in protected activity is "circumstantial evidence sufficient to raise the inference that [plaintiff's] protected activity was the likely cause for the adverse action."); *see also EEOC v. L.B. Foster Co.*, 123 F.3d 746, 754 (3d Cir.1997) (finding that employee's protected activity and the adverse employment action were "sufficiently close together to allow a

reasonable factfinder to infer the required element of causation" for *prima facie* case, where the adverse action occurred two months after the employee engaged in protected activity).

Here, Plaintiff objected to Ciccocippo's comment in early 2020. Compl. at ¶ 26. Although Defendants did not terminate his ESM position until January 8, 2021, almost a full year after the protected speech, he continued to suffer from harassment and teasing. Plaintiff pled facts that illustrate a pattern of antagonism that spanned a year. Accordingly, Defendants' Partial Motion to Dismiss is denied as to these claims.

### C.  Hostile Work Environment Claims

Defendants' third argument contends that Plaintiff's Complaint is insufficiently plead to support claims for hostile work environment. Defs.' Br. at 9. They argue that the allegations raised are in no way threatening, humiliating, or sufficiently severe. *Id*. at 13.

To establish a hostile work environment claim, the plaintiff must show: (1) they suffered intentional discrimination because of a protected characteristic; (2) the discrimination was severe or pervasive; (3) it detrimentally affected them; (4) it would detrimentally affect a reasonable person in like circumstances; and (5) there is a basis for vicarious liability. *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157,167 (3d Cir. 2013) (citation omitted).

Plaintiff sufficiently plead facts that establish the elements above. Plaintiff was in his 60s during most of the events that transpired. He described numerous instances in which Defendants' owners, decision makers, and other employees made derogatory age-related remarks. He was demoted multiple times and moved around, with coworkers and superiors constantly questioning him about retirement as a backdrop. Moreover, he was called the "old guy," and teased that he needed a wheelchair. All the facts plead are sufficient to satisfy *Iqbal*. Accordingly, Defendants' Motion is denied as to the hostile environment claims.

## IV. CONCLUSION

For the foregoing reasons, this Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Partial Motion to Dismiss.

First, Defendants' Motion is **GRANTED** as to Plaintiff's 2018 demotion; Plaintiff's separate and distinct claim of discrimination based on his 2018 demotion is **DISMISSED WITH PREJUDICE**. However, Defendants' Motion is **DENIED** as to Plaintiff's use of the facts surrounding his 2018 demotion to prove other discriminatory actions or intent.

Second, Defendants' Motion is **DENIED** as to Counts I and II's Retaliation Claims.

Third, Defendants' Motion is **DENIED** as to Counts I and II's Hostile Work Environment Claims.

An appropriate order follows.